IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM F. BYRNE, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| THE CLEVELAND CLINIC, and | : | NO. 09-889 |
| THE CHESTER COUNTY HOSPITAL, | : | |
| Defendants. | : | |

## MEMORANDUM

GENE E.K. PRATTER, J.                                            November 30, 2010

Plaintiff William F. Byrne filed this action as a *pro se* litigant against Defendants The Cleveland Clinic (the "Clinic") and Chester County Hospital (the "Hospital"). After the Court granted in part and denied in part the Defendants' motions to dismiss, Mr. Byrne has one surviving claim, a medical screening claim under the federal Emergency Medical Treatment and Active Labor Act ("EMTALA"). Mr. Byrne now moves to compel discovery, and for the reasons discussed below, the motion is denied.

I.     PROCEDURAL HISTORY

On September 30, 2010, the Court issued an Order (Docket No. 66) requiring the Hospital to "produce to Plaintiff, for all patients presenting to the Hospital's emergency room from January 15, 2007 through February 15, 2007 with symptoms of chest pain, the complete emergency room charts and any additional Hospital patient records that reflect the steps that the Hospital took to satisfy the Hospital's EMTALA-mandated protocols for each such patient ('Patient Records')." The Court's September 30, 2010 Order was issued following a hearing held on September 27, 2010, at which the parties had the opportunity to present their arguments concerning the scope of production of the Patient Records.

During the hearing Mr. Byrne raised the same argument that he raises in his Motion now before the Court that the Hospital should provide patient records for patients who presented to the Hospital's emergency room with chest pains and were ultimately diagnosed with a heart attack:

> THE COURT: . . . You say that what you are focusing on for some reason is you want to see the screening employed for other patients who ended up being diagnosed with a heart attack; is that right?
> MR. BYRNE: Yes, Ma'am.
> THE COURT: All right. Now, why do you think the diagnosis of a heart attack is the focal point when, in fact, the screening comes much before the diagnosis if I understand what's going on correctly here in terms of what counsel's been telling me.
> MR. BYRNE: Probably just because of the end result of somebody having a heart attack --
> THE COURT: Okay.
> MR. BYRNE: -- you know, versus somebody being released for indigestion, Your Honor.

Tr. at 18.

After considering Mr. Byrne's argument at the hearing and the Hospital's response, the Court ordered the Hospital to produce records for patients who presented symptoms of chest pains, regardless of the ultimate diagnoses, because those such records were relevant to Mr. Byrne's only pending claim. *See* Fed. R. Civ. P. 26(b) ("For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."); Fed. R. Civ. P. 26(c),(c)(iii) ("[T]he court must limit the frequency or extent of discovery otherwise allowed by these rules . . . if it determines that . . . the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."); *Wyeth v. Orgenus Pharma Inc.*, Civil Action No. 09-3235,

2010 WL 4117157, at *4 (D.N.J. Oct. 19, 2010) (recognizing that "courts will refuse to compel discovery if the information being sought is . . . irrelevant to the claim . . . ." (citing Fed. R. Civ. P. 26(b)(1))). Mr. Byrne's pending claim against Defendants is a medical screening claim under EMTALA, and that statute's screening requirement requires a hospital's emergency department to provide "an appropriate medical screening examination within the capability of the hospital's emergency department . . . to determine whether or not an emergency medical condition . . . exists." 42 U.S.C. §§ 1395dd(a). An EMTALA screening claim is contingent on whether appropriate screening procedures were provided; it is *not* contingent on the outcome of screening, such as the resulting diagnosis (whether correct or incorrect) or subsequent treatment provided (whether adequate or inadequate). *See Johnson v. Portz*, Civil Action No. 08-593-JJF, 2010 WL 1644279, at *3 (D. Del. Apr. 22, 2010) ("The issue in an EMTALA case is not whether a physician should have detected an emergency condition, but whether a physician provided appropriate screening . . . for those conditions the physician perceives the patient to have."); *Brooks v. Maryland Gen. Hosp., Inc.*, 996 F.2d 708, 711(4th Cir. 1993) ("[EMTALA's] avowed purpose . . . was not to guarantee that all patients are properly diagnosed, or even to ensure that they receive adequate care."(quoting *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 880 (4th Cir. 1992)).

As the Court explained to Mr. Byrne at the September 27, 2010 hearing, given the nature of his pending claim, the discovery relevant to that claim concerns the records of patients who presented at the Hospital's emergency room with symptoms of chest pain and the screening procedures the Hospital undertook to diagnose the chest pain. Tr. at 33 ("You're going to be able to see if the treatment you got in response to your complaint [of chest pain] was the equivalent

treatment given to other people who showed up in the emergency with a similar complaint [of chest pain] . . . because that's what this statute focuses on."); *see also Byrne* v. Cleveland Clinic, 684 F. Supp. 2d 641, 651-52 (E.D. Pa. 2010) ("[T]he plain language of [EMTALA] requires a hospital to develop a screening procedure designed to identify such critical conditions that exist in symptomatic patients and to apply that screening procedure uniformly to all patients with similar complaints. The key requirement is that a hospital apply its standard of screening *uniformly* to all emergency room patients, regardless of whether they are insured or can pay." (quoting *Power v. Arlington Hosp. Ass'n*, 42 F.3d 851, 856 (4th Cir. 1994) (internal quotations omitted))).

II.     ANALYSIS

Under Federal Rule of Civil Procedure 37(b), the Court may "issue further just orders" when a party disobeys a discovery order under Rule 37(a), which applies to motions and orders compelling disclosure or discovery. However, in this action the Hospital has not disobeyed the Court's September 30, 2010 Order. Both Mr. Byrne and the Hospital agree that the Hospital has complied with the Court's Order by producing the Patient Records. Pl.'s Motion to Compel at 1 ("All the files I have reviewed from the defendants (except for one) deal with patients coming to Chester County Hospital (CCH) complaining of mostly chest pain and going through triage treatment."); Def.'s Response at 5 ("In this matter, the hospital has produced 136 patient charts of patients presenting with the same signs and symptoms as Mr. Byrne, that is, chest pain."). Accordingly, because the Hospital has complied with this Court's Order, the Court denies Mr. Byrne's motion.

III. CONCLUSION

For the reasons set forth above, the Court denies Mr. Byrne's motion to compel discovery. An Order consistent with this Memorandum follows.

BY THE COURT:


<u>S/Gene E.K. Pratter</u>
GENE E.K. PRATTER
United States District Judge